## MID–STATES FREIGHT LINES, Inc., v. UNITED STATES et al.
### Civil Action No. 4937.

District Court, D. Kansas, First Division.
July 10, 1944.

Robert Stone, Robert L. Webb, and Stone, McClure, Webb, Johnson & Oman, all of Topeka, Kan., for plaintiff.

Wendell Berge, Asst. Atty. Gen., Edward Dumbauld, Sp. Asst. to Atty. Gen., and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and Nelson Thomas, Atty., Interstate Commerce Commission, all of Washington, D. C., for defendants.

Before PHILLIPS and MURRAH, Circuit Judges, and HELVERING, District Judge.

HELVERING, District Judge.

This is an action brought to enjoin the enforcement of an order of the Interstate Commerce Commission denying the application of a motor common carrier for a certificate of convenience and necessity under the "grandfather clause" of Section 206(a) of the Motor Carrier Act, 49 U.S. C.A. § 306(a). The original application was made by Irving L. MacMillan who sold his rights, if any, to Walter A. Evans. Evans sold the rights to Fleming-Wilson Mercantile Company, Inc., doing business as Mid-States Motor Freight, and that corporation sold them to the plaintiff in this action, Mid-States Freight Lines, Inc. The Commission approved each of the sales of these rights, expressly providing, however, in each case, that the order should not constitute any approval of the application or any finding as to the rights to which any party was entitled.

The application requested authority for two-way operation between Kansas City and Chicago, but the evidence in support of the application was held by the Commission to justify authorization only for westbound traffic and a Compliance Order permitting such one-way operation pending final hearing and determination on the application was issued on February 26, 1938. On March 24, 1938, Evans filed a petition requesting a stay of the one-way order and reconsideration of the application, alleging that he could present proof of two-way operation on June 1, 1935, the date set by the Act as determinative of rights under the "grandfather" proviso. Additional proof, however, was not submitted until almost eleven months later,

February 20, 1939. Thereafter, on March 9, 1939, the Commission issued a compliance order permitting two-way traffic pending final determination of the rights claimed. At about this time negotiations were initiated between Evans and Fleming-Wilson Mercantile Company, Inc., for the lease of the rights to the corporation. Approximately two and one-half months after the issuance of the first compliance order, Evans had stopped all operations over the routes covered by the application and operations were not resumed until the lease to Fleming-Wilson Mercantile Company, Inc., was approved by the Commission on May 23, 1939, approximately a month after the lease had been executed.

The Commission found as a matter of fact that the service had been interrupted and, as a conclusion, that such interruption was within the control of Evans and that, consequently, such services had not continued without interruption over which the applicant or his successors had control as required by the "grandfather clause". For this reason the Commission held that the parties were not entitled to a certificate under Sec. 206(a) and on May 22, 1943, denied the application and ordered cessation of all operations.

The plaintiff contends that the interruption of service was due to the nature of the first compliance order issued by the commission and was, therefore, an interruption not within the control of the applicant or his successors.

██ It is to be noted that it is not the function of this court to weigh the evidence which was before the Commission or to inquire into the soundness of the reasoning by which the conclusions of the Commission were reached where there was substantial support in the evidence before the Commission for its findings, conclusions, and orders, and where such orders are not arbitrary. McArthur v. United States, D.C., 44 F.Supp. 697, affirmed in 315 U.S. 787, 62 S.Ct. 915, 86 L.Ed. 1192; Inland Motor Freight v. United States, D.C., 36 F.Supp. 885; National Moving & Warehouse Corporation v. I. C. C., D.C., 48 F.Supp. 284; O'Malley v. United States, D.C., 38 F.Supp. 1. The "grandfather clause" has been held to extend only to carriers plainly within its terms. Eastern Carrier Corporation v. United States, D.C., 31 F.Supp. 232.

██ When Evans stopped his operations in May, 1938, he had already filed his petition for stay and reconsideration and this court is of the opinion that the filing of that petition, under the law, gave him the right to continue operations even if it is granted that the first Compliance Order had the effect of denying him that right. And, if it is further granted that Evans did not understand and was not cognizant of his right to continue the operations, it was certainly incumbent upon him to make timely presentation to the Commission of his proof of previous two-way operation. However, having purchased whatever rights existed only "for the butter haul", having found out that he could make more money in other operations, and having decided not to operate the line any more (Tr., Jly. 9, 1941, p. 159), and having under consideration a lease to one Hoffman, he ceased operations himself and had all telephone calls concerning business between the points served by this line transferred to Hoffman. Evans, apparently, at that time intended to abandon his rights and did not again become interested in perfecting them until negotiations were at least in prospect for the lease to Fleming-Wilson Mercantile Company, Inc. It is the opinion of this court that Evans did not make a bona fide attempt to preserve whatever rights he may have had and that there was substantial evidence before the Commission to support its conclusion that the interruption in service was an interruption which Evans had power to prevent. He took no affirmative action looking toward a continuation of operations other than to file the Petition for Stay and Reconsideration, but did commit positive acts which indicated his intent to abandon the service and to bring about an interruption of the service as a result of his own will.

For the above reasons it is the opinion of this court that the order of the Commission should be approved and the prayer of the plaintiff that the enforcement, operation and execution of the orders of the Interstate Commerce Commission of May 22, 1943, and November 8, 1943 (later modified as to effective dates), be suspended, restrained and enjoined should be and the same is hereby denied.