**ACCELERATED TRANSPORT–PONY EXPRESS, INC., et al.**

v.

**UNITED STATES of America, Interstate Commerce Commission, Lynchburg Traffic Bureau, Intervenor.**

**Civ. No. 3883.**

United States District Court D. Vermont.

March 4, 1964.

Louis Lisman, Lisman & Lisman, Burlington, Vt., Bryce Rea, Jr., Rea, Cross & Knebel, Washington, D. C., for plaintiffs.

Joseph F. Radigan, U. S. Atty., Rutland, Vt., for defendant United States.

Robert W. Ginnane, Interstate Commerce Commission, Washington, D. C., for defendant ICC.

Clayton H. Kinney, Rutland, Vt., for intervenor.

Wilbert G. Burnette, Lynchburg, Va., for intervenor.

Arthur A. Arsham, New York, N. Y., for intervenors, The National Small Shipments Traffic Conference, Inc., Drug and Toilet Preparation Traffic Conference, and Eastern Industrial Traffic League, Inc.

John J. C. Martin, New York, N. Y., for intervenors, The National Small Shipments Traffic Conference, Inc., Drug

and Toilet Preparation Traffic Conference, and Eastern Industrial Traffic League, Inc.

Dickson R. Loos, Washington, D. C., for intervenors, The National Industrial Traffic League.

Before WATERMAN, Circuit Judge, and GIBSON and BLUMENFELD, District Judges.

BLUMENFELD, District Judge.

The Middle Atlantic Conference [1] filed a schedule of proposed rates with the Commission which would establish a general increase in motor carrier class and commodity rates between points in Middle Atlantic Territory [2] and between Middle Atlantic and New England Territories.[3] On January 13, 1961, the Commission instituted an investigation into the lawfulness of the proposed increases. Pending a final decision by the Commission, the increases became effective on January 16, 1961. Protests to the increased rates were filed by numerous parties, including those who have intervened as defendants in this court proceeding.

This case originated and was conducted as a general revenue proceeding in which the carriers' needs, as a group,[4] for a general increase in rates [5] were considered by the Commission, as distinguished from a need of individual carriers for increased rates for specific traffic or different commodities. To effect the increase in revenue, the plaintiffs proposed generally to superimpose flat arbitrary amounts on already existent rates, regardless of classification ratings. It is plain that flat arbitraries would distort traditional percentage relationships between classifications and would result in greater increases percentagewise and per mile on the shorter hauls and on the lower-rated traffic. The effect of this would be to increase the likelihood of higher rates for short than for long hauls through border points and beyond to territories where the rates are lower.

After an exhaustive hearing before one of the Commission's examiners, and following the submission of briefs by the parties, the examiner issued his recommended report and order. The examiner concluded that the proposed increases generally were just and reasonable.[6] But he also concluded that, where the effect of the proposed increases resulted in rates which were higher to intermediate border points than to points beyond over the same routes, they were not shown to be just and reasonable. Exceptions to the examiner's report were filed by both the respondents (plaintiffs) and the protestants, and on March 20, 1963 the report of Division 2 of the Commission was issued. This stated:

"With respect to resulting higher rates to border points than to points beyond over the same routes, obviously, in accord with prior decisions of the Commission, such higher rates would be unlawful, and we concur in the conclusion of the examiner in this respect that if a carrier chooses

1. The Middle Atlantic Conference is an organization of motor carriers, established pursuant to § 5a of the Interstate Commerce Act, 62 Stat. 472 (1948), 49 U.S.C. § 5b (1958), which establishes and publishes rates for the account of its members.

2. Middle Atlantic Territory includes the states of New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, West Virginia, and the District of Columbia, and parts of Kentucky and Tennessee.

3. New England Territory includes the states of Maine, Vermont, New Hampshire, Massachusetts, Rhode Island and Connecticut.

4. The group was comprised of approximately 3000 motor carriers of whom some 1300 were members of the Conference.

5. Except in certain short hauls in the New York Metropolitan area, and some class and commodity rates on interstate routes, all specifically excluded from the proposal submitted by the plaintiffs.

6. The Commission enlarged the weight categories to which the addition of arbitraries might be found just and reasonable to include shipments of less than 6000 lbs., a finding the examiner was unwilling to make.

to participate in the lower rates for the longer hauls it should arrange to maintain no higher rates at intermediate border points. To the extent that such maladjustments occur, the increased rates are unjust and unreasonable.

"We find that the increased rates and charges are just and reasonable, except that where the resulting rates to intermediate points are higher than the rates to more distant points over the same routes, the former are not shown to be just and reasonable. The schedules will be ordered canceled to the extent found [not shown *] unlawful, without prejudice to their amendment so as to provide for the application of lower rates to more distant points as maxima at intermediate border points in the area here considered. The proceeding will be discontinued." (319 I.C.C. at 177)

The petition of the respondents for reconsideration of the report and order of the Commission insofar as it directed them to reduce their rates to border points, filed on May 15, 1963, was denied by Division 2, acting as an Appellate Division, "for the reason that sufficient grounds have not been presented to warrant granting the action sought."

The respondents thereafter filed this complaint against the United States and Interstate Commerce Commission to set aside and annul the Commission's order, 28 U.S.C. §§ 1336, 1398 (1958), and obtained a temporary restraining order. 28 U.S.C. § 2284(3) (Supp. III, 1959–61). Subsequently, this court of three-judges was convoked as required by 28 U.S.C. § 2325 (1958). The protestants before the Commission were granted leave to intervene in behalf of the defendants. The restraining order was continued in effect only until a hearing was held on plaintiffs' action for final relief. We have concluded that the complaint should be dismissed.

The target of the plaintiffs' argument is that portion of the Commission's decision which holds that such higher rates to intermediate border points are not shown to be just and reasonable. The plaintiffs do not challenge the finding that blanket application of the arbitraries to increase all of the rates would in some cases result in a higher charge for hauling goods to a "border point" located within the Middle Atlantic Territory than for hauling the same goods, over the same route, through the border point, to a point located in a different territory.

The attack proceeds on two grounds: First, that the Commission's reliance upon a presumption that higher rates for shorter distances than for longer distances are unreasonable was unjustified because the "presumption" merely shifted the burden of going forward to the plaintiffs. On that basis they argue that, since they did come forward with evidence, the effect of the presumption was dissipated. Secondly, they contend that "assuming * * * that the fact that some of the plaintiffs' rates for shorter distances are higher than other rates for longer distances has probative value as evidence that they are unreasonable, the evidence as a whole does not support the Commission's finding that they are unreasonable." (Reply Brief for Plaintiffs, p. 9)

These contentions must be considered in light of statutory provisions which govern the rate-making functions of the Commission. Whenever a motor carrier files a tariff containing a new rate, subsection 216(d) of the Motor Carrier Act,[7] as amended, 49 U.S.C. § 316(d) (1958), requires that it shall be "just and reasonable," and declares that every "unjust and unreasonable charge" is unlawful:

"(d) All charges made for any service rendered or to be rendered by any common carrier by motor vehicle engaged in interstate or foreign commerce in the transportation of

---

* Bracketed portion deleted by Report and Order, February 4, 1964.

7. 49 Stat. 543 (1935).

passengers or property as aforesaid or in connection therewith shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof, is prohibited and declared to be unlawful. It shall be unlawful for any common carrier by motor vehicle engaged in interstate or foreign commerce to make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, gateway, locality, region, district, territory, or description of traffic, in any respect whatsoever; or to subject any particular person, port, gateway, locality, region, district, territory, or description of traffic to any unjust discrimination or undue or unreasonable prejudice or disadvantage in any respect whatsoever: *Provided, however,* That this subsection shall not be construed to apply to discriminations, prejudice, or disadvantage to the traffic of any other carrier of whatever description."

And whenever, as in this case, a carrier seeks a change in rates, sub-section 216 (g) of the Act, as amended, 49 U.S.C. § 316(g) (1958), places the burden of proof on the carrier:

"At any hearing involving a change in a rate, fare, charge, or classification, or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable."

■ These laws are very plain and their application to this case is not difficult. They obviate the need for a critical analysis of the technical refinement of the vocabulary of presumptions urged upon us by the plaintiffs. It has long been established that rates higher for short hauls than for longer hauls, via the same carrier, over the same route, is so significant an element affecting reasonableness as to make such rates unreasonable on their face. In the leading case of Patterson v. Louisville & N. R. R., 269 U.S. 1, 46 S.Ct. 8, 70 L.Ed. 131 (1926), Mr. Justice Brandeis stated: "Apart from statutory enactment, it is prima facie unreasonable to charge more for a shorter than for a longer haul." 269 U.S. at 11, 46 S.Ct. at 10, 70 L.Ed. 131.[8] Followed in Atlas Portland Cement Co. v. Northampton & B. R.R., 120 I.C.C. 583, 585 (1927); Sun Oil Co. v. Central R.R. Co., 301 I.C.C. 558, 560 (1957). The same principle has been applied by the Commission since the earliest days of its administration of the Motor Carrier Act. In Fifth Class Rates Between Boston and Providence, 2 M.C.C. 530 (1937), it stated:

"In the absence of a sound reason therefor, the maintenance of class rates to intermediate points higher than to more distant points on the same route by a motor carrier is prima facie unreasonable." (2 M.C. C. at 546)

There is no need to call the entire roll of the many subsequent decisions which have adhered to the principle. A few examples are New England Motor Carrier Rates, 8 M.C.C. 287, 322–23 (1938); Electric Storage Batteries from Kansas to Missouri, 46 M.C.C. 729, 732 (1947); Ford Motor Co. v. Standard Transp. Co., 62 M.C.C. 311, 315 (1953).

■■ The plaintiffs did not urge before us, nor does the extensive record before the Commission disclose, that uncontroverted evidence of segregated costs for the particular traffic subjected to the rates which the Commission has found were not shown to be reasonable was presented to the Commission. Cf. Middle West Exceptions Ratings, Cancellation, 48 M.C.C. 53, 58 (1948). That the plaintiffs were fully aware of the presence of this issue is clear. By motion filed March 5, 1962, the carriers sought to

---

8. In the case of rail carriers, Section 4 of the Interstate Commerce Act, 24 Stat. 380 (1887), as amended, 49 U.S.C. § 4 (Supp. IV, 1959–62), specifically prohibits a greater charge for a shorter haul without the Commission's prior approval.

sever the issue of border point rate disparities and to postpone further proceedings on that issue. The Commission, by order of June 7, 1962, denied the motion stating that sufficient grounds therefor had not been presented. Denial of that motion is not made a ground of the complaint before us. The plaintiffs had first-hand knowledge that what happened here has often happened before in general revenue proceedings of this nature. In 1949 these plaintiffs were admonished to remove border maladjustments at Lynchburg and other border points. Increases, Middle Atlantic and New England, 49 M.C.C. 357, 366. Again in 1956, in Class Rates Between Middle Atlantic and New England Territories, 67 M.C.C. 741, the Commission said:

"Higher class rates for lesser distances over the same routes as revealed on this record are clearly unjust and unreasonable. In publishing rates in conformity with our findings in these proceedings, we shall expect the respondents to eliminate all rate discriminations similar to that above described." (67 M. C.C. at 761)

Nor do the plaintiffs, who are willing enough to accept the approval of the increased rates generally, claim that without the approval of these proposed increases to the rates to border points that those rates are unremunerative. There is no inherent inconsistency between the Commission's finding that higher rates to border points were not shown to be reasonable and its finding that increased rates of all the carriers considered as a group in other respects were reasonable. The burden of proof was on the plaintiffs to show that the proposed increases in rates which would result in a higher rate for a shorter than a longer haul were just and reasonable. They did not satisfy that burden.

■ The determination of the justness and reasonableness of rates is peculiarly a matter for the judgment and discretion of the Commission. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 545–546, 62 S.Ct. 366, 86 L.Ed. 432 (1942); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); Western Paper Makers Chem. Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941 (1926).

■ The Supreme Court pointed out in the Mississippi Valley Barge Line case:

"The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the commission by training and experience is qualified to form. Florida v. United States, ante, p. 1. [292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077]. It is not the province of a court to absorb this function to itself. I. C. C. v. Louisville & Nashville R. Co., 227 U.S. 88, 100 [33 S.Ct. 185, 57 L. Ed. 431]; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, [46 S.Ct. 500, 70 L. Ed. 941;] Virginian Ry. Co. v. United States, 272 U.S. 658, 663, [47 S.Ct. 222, 71 L.Ed. 463.] The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." (292 U.S. at 286–287, 54 S.Ct. at 694, 78 L.Ed. 1260)

In Western Paper Makers Chem. Co., the Supreme Court said:

"The determination whether a rate is unreasonable or discriminatory is a question on which the finding of the Commission is conclusive if supported by substantial evidence, unless there was some irregularity in the proceeding or some error in the application of the rules of law. Skinner & Eddy Corporation v. United States, 249 U.S. 557, 562, [39 S.Ct. 375, 63 L.Ed. 772;] New England Divisions Case, 261 U.S. 184, 204, [43 S.Ct. 270, 67 L.Ed. 605.] (271 U.S. at 271, 46 S.Ct. at 501, 70 L.Ed. 941)

These decisions in rate cases comport with the general principle that orders of

the Commission should not be set aside, modified, or disturbed by a court on review if they lie within the scope of the Commission's statutory authority and are based upon adequate findings, which are in turn supported by substantial evidence, even though the court might reach a different conclusion on the facts presented. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Rochester Tel. Corp. v. United States, 307 U.S. 125, 138–140, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). The Commission's judgment is to be exercised in the light of the facts of each individual case, and the courts have no concern with the consistency or inconsistency of decisions it has rendered. Virginian Ry. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463 (1926); Western Paper Makers Chem. Co. v. United States, supra. Furthermore, there is a presumption that the Commission has properly performed its official duties, and this presumption supports its acts in the absence of clear evidence to the contrary. I. C. C. v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Baltimore & O. R.R. v. United States, 298 U. S. 349, 358–359, 56 S.Ct. 797, 80 L.Ed. 1209 (1936).

■ The plaintiffs' attempt to inject a question of undue preference and prejudice is rejected as irrelevant to the issue or proof in this case. That question is not in this case. Under sub-section 216 (d) of the Act, motor carrier rates are required to meet two separate and distinct criteria: First, they must be "just and reasonable;" and second, they must not result in "undue or unreasonable prejudice or disadvantage." The report of the Commission is unmistakably clear that the basis for condemning the higher rates to border points was that the rates to that extent were not shown to be just and reasonable. The Commission did not purport to find that the rates resulted in undue preference and prejudice. Such a finding was not necessary for the decision reached or to the validity of the order.

■ The plaintiffs do not contend that the principle that a higher charge for a shorter haul than a longer haul is prima facie unreasonable was inapplicable on the ground that the longer haul terminated outside the territory. But in an attack upon the order that the scheduled increases which create rate disparities at border points be canceled to the extent that the resultant rates are higher at intermediate than at more distant points, they do contend that since the disparities at the border points are the result of lower rates beyond the border the order is invalid because the plaintiffs have no control over rates beyond the border. This asserted defense was specifically rejected by the Commission:

"The respondents claim that they are powerless to correct such situations, and suggest that the rates to and from the border points be required as minimum rates to and from the more distant points. Interterritorial rates are not here in issue." (319 I.C.C. at 175)

We agree with the examiner's reasoning concurred in by the Commission "that if a carrier chooses to participate in the lower rates for the longer hauls it should arrange to maintain no higher rates at intermediate border points." Id. at 177. To the extent that such maladjustments occur, the increased rates are unjust and unreasonable. We perceive no meritorious legal basis for an attack upon the Commission's order that the schedules be "canceled to the extent found unlawful without prejudice to their amendment as to provide for the application of lower rates to more distant points as maxima at intermediate border points in the area here considered." 319 I.C.C. at 177 (as corrected by Report and Order, February 4, 1964). See Lynchburg Traffic Bureau v. Smith's Transfer Corp., 310 I.C.C. 503, 505–06 (1960).

■ There is ample warrant in the evidence and the statute for the findings in the Commission's report. The report on its face clearly expresses and explains the conclusions reached. And, in our view, the Commission's conclusions were

not inadequate, immaterial or arbitrary. See Gilbertville Trucking Co. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L. Ed.2d 177 (1962). Accordingly, we sustain the order of the Interstate Commerce Commission and order that the complaint be dismissed.